IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LISA GAE WILLIAMSON,

        Plaintiff,

v.                                                                          No. 2:16-cv-827-KRS

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

        Defendant.

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REVERSE AND REMAND

Plaintiff seeks review of the Commissioner's determination that she is not disabled under Title II or Title IV of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383c. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b), the Court has examined the administrative record as a whole and considered Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum, filed February 18, 2017 [Doc. No. 22], the Commissioner's response in opposition, filed May 31, 2017 [Doc. No. 32], and Plaintiff's subsequent reply, filed June 14, 2017 [Doc. No. 33]. Having so considered, the Court FINDS and CONCLUDES that Plaintiff's motion is not well-taken and should be denied.

### I. PROCEDURAL BACKGROUND

In November of 2012, Plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income, alleging that she had been disabled since September 29, 2012, due to a "bundle batch block," fibromyalgia, arthritis, hypertension, and high cholesterol. [Doc. No. 15-10, p. 14]. On January 7, 2013, it was determined that Plaintiff was not disabled

and her claim was denied. [Doc. No. 15-6, p. 2]. This determination was affirmed on June 28, 2013 [Doc. No. 15-6, p. 8], and a subsequent hearing before an administrative law judge ("ALJ"), held on October 27, 2014, again, ended in a denial. [Doc. No. 15-3, pp. 13-26]. The ALJ's decision became final when, on June 3, 2016, the Appeals Council denied Plaintiff's request for review. [Doc. No. 15-3, pp. 2-4].

## II. STANDARD

Judicial review of the Commissioner's decision is limited to determining whether the findings of the ALJ are supported by substantial evidence. 42 U.S.C. §405(g); *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted ). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (quotation omitted). The Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* Even so, it is not the function of the Court to review Plaintiff's claims de novo, and the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III. ANALYSIS

### A. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(3)(A); § 423(d)(1)(A). The Act further adds that for the purposes of § 1382c(3)(A) and § 423(d)(1)(A):

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(3)(B); § 423(d)(2)(A).

When evaluating a disability claim under this standard, the ALJ employs a five-step sequential process. 20 C.F.R. § 416.920. In the first four steps, the claimant must prove that he or she (1) is not engaged in any substantial gainful activity; (2) has a severe physical or mental impairment, or combination of impairments, that meets the twelve month duration requirement; (3) has an impairment, or combination thereof, that meets or equals a listing in 20 C.F.R. pt. 404, subpt. P, App.; and (4) is unable to engage in past relevant work. 20 C.F.R. § 416.920(4)(i)-(iv). If the disability claim survives step four, the burden shifts to the ALJ to prove, at step five, that the claimant is able to adjust to other jobs presently available in significant numbers in the national economy. 20 C.F.R. § 416.920(4)(v). *See also Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

Steps four and five are based on an assessment of the claimant's residual functional capacity ("RFC") which gauges "what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). *See also* 20 C.F.R. § 416.945(a)(1).

### B. The ALJ's Determination

In the case at bar, ALJ Karen Wiedemann engaged in the sequential analysis set forth above, first finding that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 29, 2012.[1] At step two, ALJ Wiedemann determined that Plaintiff has severe impairments in the form of bipolar disorder verses depressive disorder with generalized anxiety, myalgia, and hypertension. [Doc. No. 15-3, p. 16]. At step three, she determined that none of Plaintiff's impairments—either alone or in combination—met or medically equaled the severity of a listed impairment.

ALJ Wiedemann then carried out the required RFC assessment, finding that Plaintiff has the residual functional capacity to perform light work "that is simple, repetitive, and routine in nature, and involves use of simple judgment." [Doc. No. 15-3, pp. 22-23]. ALJ Wiedemann further determined that Plaintiff can sit for up to six hours of an eight hour workday, stand and/or walk for up to six hours of an eight hour workday, and that "she is able to concentrate, persist, and remain on task for two-hour blocks of time." [Doc. No. 15-3, p. 23].

With this assessment at hand, ALJ Wiedemann then proceeded to step four where she considered Plaintiff's employment history in the food service industry. Ultimately, the ALJ concluded that Plaintiff was able to perform her past relevant work as a fast food worker and short order cook and, therefore, was not disabled. [Doc. No. 15-3, p. 25].

### C. Challenges to the ALJ's Determination

In support of her request for reversal and remand, Plaintiff argues that the ALJ (1) improperly discounted the opinion of her nurse practitioner, Kim Devou; (2) inaccurately

---

[1] ALJ Wiedemann also determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2017. [Doc. No. 15-3, p. 15].

assessed her RFC; and (3) failed to engage in a proper vocational analysis prior to concluding that she was capable of performing past relevant work.

### 1. Opinion Evidence of Nurse Practitioner Kim Devou

In October of 2012, Plaintiff began receiving psychiatric and counseling services from Mental Health Resources, Inc. ("MHR"). [Doc. No. 15-23, p. 24]. Records submitted by MHR, which span the course of two years, indicate that Plaintiff's primary treatment provider was Nurse Practitioner ("NP") Kim Devou who, on or about October 17, 2014, completed a Mental Residual Functional Capacity Questionnaire on behalf of Plaintiff. [Doc. No. 15-38, pp. 8-16].

In her assessment of Plaintiff's functional capabilities, NP Devou noted her belief that Plaintiff is disabled and unable to work, and expounded that Plaintiff has marked limitations in several areas including, inter alia, her ability to remember work-like procedures; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods of time; work appropriately with coworkers and supervisors; make simple work-related decisions; perform scheduled activities which require regular attendance and punctuality; and complete a normal workday/workweek without psychologically based interruptions or the need for accommodations. [Doc. No. 15-38, pp. 12-15].

Upon review of the questionnaire, ALJ Wiedemann determined that it was inconsistent "with the activity reports and mental status observations reflected in the progress notes from MHR," and thus assigned "little weight" to NP Devou's opinion. [Doc. No. 15-3, p. 25]. ALJ Wiedemann also noted that nurse practitioners are not "acceptable medical sources" as defined by the Social Security Act. [Doc. No. 15-3, p. 25].

Plaintiff argues that NP Devou's opinion as to her functional capacity is consistent with "many findings in the treatment records" [Doc. No. 22, p. 17], and further contends that ALJ

Wiedemann did not afford the opinion proper deference or consideration as "other source evidence." Neither argument has merit.

In regard to consistency, ALJ Wiedemann's Decision contains multiple references to Plaintiff's treatment history with MHR and NP Devou. [Doc. No. 15-3, pp. 16-22, 25]. These references include citations to NP Devou's mental status observations which noted that Plaintiff had a euthymic mood and a logical and organized thought process. [Doc. No. 15-3, pp. 17-19, 20, 22]. Additionally, ALJ Wiedemann's discussion of the MHR evidence explains that Plaintiff reported that she engaged in a variety of daily activities such as "arts and crafts, gardening, travel…caring for…a friend with cancer…household cleaning in exchange for rent, doing laundry for…income…school attendance, and participation in a sobriety support group." [Doc. No. 15-3, p. 22].

Plaintiff's mental health struggles are also summarized in the unfavorable decision underlying the case at bar; yet, ALJ Wiedemann weighed the evidence and determined that it indicated only "mild restrictions" in daily living and social functioning and "moderate limitations" in the areas of concentration, persistence, and pace. [Doc. No. 15-3, p. 22]. While Plaintiff points to "many findings" [Doc. No. 22, p. 17] in the MHR records that support NP Devou's opinion evidence, ALJ Wiedemann "was entitled to resolve such evidentiary conflicts and did so." *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

In the second part of her argument, Plaintiff concedes that NP Devou is not an "acceptable medical source" but contends, rather vaguely, that ALJ Wiedemann failed to consider all of the regulatory factors found in 20 C.F.R. § 404.1527. Presumably,[2] Plaintiff is referring to the factors listed in 20 C.F.R. § 404.1527(c)(1)-(6) which detail what the

---

[2] Plaintiff cites to 20 C.F.R. § 404.1527, without specification [Doc. No. 22, p. 18], as well as to 20 C.F.R. § 404.1527(d)(2) [Doc. No. 33, p.3] which is inapplicable.

Commissioner considers in her evaluation of medical opinions. However, 20 C.F.R. § 404.1527(f)(1) makes clear that when weighing "other source" evidence, "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source…depends on the particular facts in each case." *Id.*

Further, consideration of "other source" evidence is guided by SSR 06-03P, 2006 WL 2329939 (August 9, 2006),[3] which echoes 20 C.F.R. § 404.1527(f)(1) and explains:

> The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

SSR 06-03P, 2006 WL 2329939, at *5. SSR 06-03P additionally provides that "the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06-03P, 2006 WL 2329939, at *6.

Here, the record indicates that ALJ Wiedemann weighed all of the evidence provided by MHR before determining that "little weight" should be afforded to NP Devou's opinion. In her consideration of the evidence, ALJ Wiedemann documented Plaintiff's relationship with NP Devou [Doc. No. 15-3, pp. 16-19], and concluded that the nurse practitioner's opinion was inconsistent with the record. [Doc. No. 15-3, p. 25]. ALJ Wiedemann also noted that NP Devou commented on physical conditions which appeared to be "beyond the scope of the nurse practitioner's evaluation and expertise at the mental health clinic." [Doc. No. 15-3, p. 25]. These explanations not only accord with SSR 06-03P, but they also demonstrate that ALJ Wiedemann

---

[3] Rescinded by Federal Register Notice Vol. 82, No. 57, page 15263 effective March 27, 2017.

took into account the factors found in 20 C.F.R. § 404.1527(c)(1)-(6). The Court is unswayed by Plaintiff's argument to the contrary.

## 2. RFC Assessment

Plaintiff next argues that ALJ Wiedemann's RFC finding is both inaccurate and incomplete. As grounds, Plaintiff contends that the RFC fails to include the mental limitations identified by NP Devou, as well as physical limitations regarding her ability to perform prolonged sitting, standing, or walking.

Having already determined that ALJ Wiedemann did not err in her weighting of NP Devou's opinion evidence, the Court finds that Plaintiff's argument as to omitted mental limitations is moot. In regard to any physical limitations, Plaintiff points to medical evidence from Roosevelt General Hospital ("RGH") which, she claims, "renders the ALJ's RFC finding that Ms. Williamson can perform prolonged sitting, standing, and walking unsupported by substantial evidence, as it lends credence to her consistent complaints of pain and limitation." [Doc. No. 22, p.20]. The RGH evidence to which Plaintiff refers was not before ALJ Wiedemann at the time she rendered her decision; however, it was submitted to the Appeals Council on or about April 10, 2015, and thus is properly considered by the Court. *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Even so, the evidence does not serve to unseat ALJ Wiedemann's RFC determination.

Although the records supplied by RGH do convey that Plaintiff suffered from back pain and a decreased range of joint motion, the treatment notes from Plaintiff's various physical examinations at the hospital also state that she has normal muscle strength and a "normal range of motion without pain" in both her left and right lower extremities, as well as a normal gait and station. [Doc. No. 15-44, pp. 10, 19, 30]. The RGH evidence additionally shows that Plaintiff

received a corrective procedure in the form of a kyphoplasty on November 20, 2014, and an anti-inflammatory steroid injection on January 15, 2015; the latter of which is said to have improved her functionality. [Doc. No. 15-44, p. 9].

Further, in reviewing the medical evidence before her, ALJ Wiedemann referenced multiple medical reports which reflected a "denial of musculoskeletal symptoms and/or [a] normal musculoskeletal examination." [Doc. No. 15-3, p. 24]. She also noted that Plaintiff admitted to engaging in a variety of daily activities, including "frequent walking" and "walking two miles on a regular basis for relaxation." [Doc. No. 15-3, p. 22]. In addition, Plaintiff testified that she was last employed as a waitress in January of 2014, and that this employment ended, not because of any personal limitations, but because business slowed down and her services were no longer needed. [Doc. No. 15-4, pp. 11-12]. *See also* Doc. No. 15-42, p.7 (noting that Plaintiff walks frequently and has no limitations).

In sum, while the RGH evidence contains support for Plaintiff's back pain complaints, it does not overwhelm the medical evidence ALJ Wiedemann used to support her RFC assessment of Plaintiff. The RFC determination is supported by substantial evidence and the Court neither may nor will substitute its judgment for that of the ALJ. *Glass*, 43 F.3d 1392, 1395 (10th Cir. 1994).

Plaintiff also claims that the record was underdeveloped in terms of her physical impairments and asserts that ALJ Wiedemann was under a duty to order a consultative exam to cure this deficiency. To this end, Plaintiff argues that the ALJ "rejected" the opinions of the non-examining state agency physicians—leaving "no medical opinions on which to base her RFC finding"—and failed to determine whether Plaintiff has fibromyalgia. [Doc. No. 22, pp.

20-21]. Unfortunately, both of these arguments are undeveloped and unsupported as they comprise nothing more than an assortment of statements followed by a few tenuous citations.

To the extent these claims can be analyzed, the Court notes that it has already determined that Plaintiff's RFC is supported by substantial evidence, rendering the first half of Plaintiff's argument moot. *See supra* pp. 8-9. With reference to the second half of the argument, Plaintiff states that ALJ Wiedemann had a "duty" to order a consultative examination because of an "ambiguity in the record" as to whether Plaintiff with diagnosed with fibromyalgia. [Doc. No. 22, p. 21]. Ambiguity, however, is not the standard. *Flaherty v. Astrue*, 515 F.3d 1067, 1072 (10th Cir. 2007) (explaining that "conflict or ambiguity in the record" is not what triggers an ALJ's duty to develop the record). Rather, "the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). It is not until this burden is met that the ALJ's duty arises. Further, "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted) (alteration in original).

In the case at bar, Plaintiff does not contend that there is evidence in the record sufficient to warrant further investigation into her claim of disabling fibromyalgia. Yet, even if Plaintiff had made a more apt argument, her claim would fail. ALJ Wiedemann considered the evidence of record and determined that it did not support a diagnosis of fibromyalgia. In so determining, she explained that references to the impairment "appear largely limited to unsubstantiated history." [Doc. No. 15-3, pp. 20-21]. And, as previously mentioned, ALJ Wiedemann found that the records regarding Plaintiff's physical health contained multiple normal musculoskeletal

examinations as well as multiple denials of musculoskeletal symptoms. [Doc. 15-3, pp. 18, 19, 24].

In fact, the vast majority of non-historical medical references to fibromyalgia are found in Plaintiff's mental health records which, as noted by ALJ Wiedemann, are limited to Plaintiff's reports that Gabapentin—a prescription prescribed by Plaintiff's mental health provider—improved her "fibromyalgia" symptoms. [Doc. No. 15-3, pp 18, 20, 23, 24]. Accordingly, the Court finds that substantial evidence supports ALJ Wiedemann's determination that Plaintiff does not have the severe impairment of fibromyalgia.

### 3. Vocational Analysis

Finally, Plaintiff argues that ALJ Wiedemann's determination that she is able to return to her past work as a short order cook (Dot. 313.374-014) or fast food worker (Dot. 311.472-010) is contrary to the evidence. As to the position of short order cook, Plaintiff explains that it requires skills which exceed her assessed RFC;[4] a fact acknowledged by the vocational expert ("VE") who testified at her hearing. In regard to the job of fast food worker, Plaintiff claims that this position requires a reasoning level of two,[5] which is inconsistent with her limitation to simple work, and a standing/walking component that exceeds her six hour limitation.

Assuming without deciding that Plaintiff's limitations preclude her from working as a short-order cook, substantial evidence supports ALJ Wiedemann's determination that Plaintiff is capable of performing her past relevant work as a fast food worker. Plaintiff, correctly, asserts that the occupation of fast food worker requires a reasoning level of two, *see* DICOT 311.472-010, 1991 WL 672682 (January 1, 2016); however, she incorrectly suggests that this runs

---

[4] In her response, the Commissioner appears to concede that the job requirements of a short order cook exceed Plaintiff's limitation to simple work. [Doc. No. 32, p. 22].
[5] Plaintiff also states that this level of reasoning is inconsistent with NP Devou's opinion evidence. [Doc. No. 22, p. 23]. Again, this matter is moot. *See supra* pp. 5-8.

contrary to her limitation to simple work.  While the Tenth Circuit has yet to definitively determine whether a limitation to "simple work" equates with a specific reasoning level, it has indicated that this limitation might be on par with a reasoning level of two.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding an "apparent conflict" between jobs requiring level-three reasoning and a claimant who is limited to simple, repetitive tasks, and noting that the plaintiff's RFC was more consistent with level-two reasoning).

Turning to the standing/walking requirements of the position, the Dictionary of Occupational Titles ("DOT") classifies the occupation of Fast Foods Worker as "light work." DICOT 311.472-010, 1991 WL 672682 (January 1, 2016).  The Social Security Administration ("SSA") has clarified that "light work" involves "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *7.  Although this requirement is consistent with Plaintiff's assessed walking limitation, Plaintiff argues that it is inconsistent with how the job is actually performed in the workplace.  Specifically, Plaintiff explains that in her past work in the food industry, she was only "allowed" to sit for less than thirty minutes per workday.  [Doc. No. 22, p. 23].

The SSA has specified that the DOT may be relied upon to define how a job is usually performed in the national economy.  SSR 82-61, 1982 WL 31387, at *2.  And, "a claimant will be found to be "not disabled" when it is determined that he or she retains the RFC to perform: 1. The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Id.*  *See also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (explaining that a "claimant bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation

is generally performed throughout the national economy."); SSR 82-62, 1982 WL 31386, at *3 ("The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled.""). Thus, even if Plaintiff's past positions required more exertion than the DOT description of Fast Foods Worker, she is able to perform the standing/walking functional demands of the job as described by the DOT.

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that the Commissioner's rejection of Plaintiff's disability claim was based upon substantial evidence. Accordingly, the decision must stand. *See Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992) ("As long as substantial evidence supports the ALJ's determination, the Secretary's decision stands").

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand to Agency for Rehearing [Doc. No. 22] is hereby **DENIED**.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**